United States District Court
Southern District of Texas
ENTERED
August 04, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **RUBEN DARIO GARCIA PAEZ,** | § | |
| | § | |
| **Petitioner,** | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:26-cv-05408** |
| | § | |
| **WARDEN, COASTAL BEND DETENTION CENTER, *et al.*,** | § | |
| | § | |
| | § | |
| **Respondents.** | | |

**ORDER**

Before the Court is Petitioner Ruben Dario Garcia Paez's Petition for Writ of Habeas Corpus (ECF No. 1) and Respondents' Motion for Summary Judgment (ECF No. 7). For the following reasons, the Court **GRANTS IN PART** the Petition for Habeas Corpus and **DENIES** Respondents' Motion for Summary Judgment.

## I. FACTUAL BACKGROUND

Petitioner is a citizen of Venezuela. ECF No. 7, Exhibit 1 ("Carter Decl.") at ¶ 4. On November 15, 2004, the United States District Court for the Eastern District of New York convicted Petitioner for Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance Containing Heroin, a Schedule I Controlled Substance. ECF No. 7, Exhibit 5; *see also* Carter Decl. at ¶ 5. Petitioner was sentenced to time served with credit for sixteen (16) months served. *Id*. On December 17, 2004, the Department of Homeland Security (DHS) initiated proceedings against Petitioner in immigration court. Carter Decl. at ¶ 7. On January 7, 2005, an immigration judged ("IJ") determined Petitioner was subject to removal on the charges in the Notice to Appear (NTA), and found that Petitioner did not make any applications for relief from removal. ECF No. 7, Exhibit 3 (2005 Removal Order). Petitioner was ordered removed from the

United States to Venezuela. *Id*. On March 2, 2005, Petitioner was removed from the United States. Carter Decl. at ¶ 9.

On July 9, 2021, United States Customs and Border Patrol (CBP) encountered Petitioner in the Eagle Pass, Texas Border Patrol Sector. Carter Decl. at ¶ 10. CBP determined that Petitioner did not have any documents that would allow lawful entry into the United States and that Petitioner was not inspected or admitted into the United States by immigration officers. *Id*. CBP apprehended Petitioner. *Id*. On or about July 10, 2021, CBP served Petitioner with a Notice of Intent/Decision to Reinstate his Prior Removal Order. *Id*. at ¶ 11. On February 2, 2022, the United States District Court for the Western District of Texas convicted Petitioner of Illegal Re-Entry into the United States. ECF No. 7, Exhibit 6.

On March 2, 2022, United States Marshals released Petitioner into the custody of Immigration and Customs Enforcement (ICE). Carter Decl. at ¶ 13. Petitioner manifested a fear of returning to Venezuela. *Id*. On or about March 3, 2022, DHS initiated "withholding only" removal proceedings against Petitioner in immigration court. *Id*. at ¶ 14. The purpose of these proceedings is to determine whether Petitioner is entitled to protection from removal to Venezuela on the basis that his return would expose him to persecution. *See* 8 U.S.C. 1231(b)(3).

On March 16, 2022, ICE released Petitioner from custody on an Order of Supervision (OSUP) pending resolution of his withholding proceedings. *Id*. at ¶ 15. On April 12, 2024, the immigration judge denied Petitioner's applications for withholding of removal and ordered Petitioner removed from the United States. ECF No. 7, Exhibit 7 (2024 Order). Petitioner timely appealed the immigration judge's decision to the Board of Immigration Appeals (BIA). Carter Decl. at ¶ 17. This appeal remains pending before the BIA.

On May 23, 2024, Petitioner failed to report to ICE for a scheduled check-in appointment, a violation under his conditions of release. Carter Decl. at ¶ 18. Petitioner was not re-detained at this time, and on November 28, 2025, the Government renewed Petitioner's employment authorization. ECF No. 7, Exhibit 4.

On June 30, 2026, ICE encountered and re-detained Petitioner. Carter Decl. at ¶ 19. On July 8, 2026, Petitioner filed the instant Petition for Habeas Corpus. *See* ECF No. 1. On July 14, 2026, ICE served Petitioner a Notice of Revocation of Release, which stated that his OSUP was being revoked for his failure to report for his scheduled check-in in May of 2024. ECF No. 7, Exhibit 9 (Notice of Revocation of Release). Petitioner is currently detained at the Coastal Bend Detention Facility in Robstown, Texas. Carter Decl. at ¶ 5.

## II. ANALYSIS

Respondents position is that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231 on account of his reinstated final removal order. Although Petitioner has not disputed this characterization of the statutory basis for his detention, he alleges that his detention violates the Due Process Clause of the Fifth Amendment as interpreted in *Zadvydas v. Davis*, 533 U.S. 678, 690–91 (2001). Because the Court finds that Petitioner's detention is unlawful under *Zadvydas*, it declines to address his additional claims for relief.

The Immigration and Nationality Act ("INA") typically allows the United States Government ("the Government") ninety days to remove a noncitizen following an order of removal, during which time the noncitizen "shall" be detained. 8 U.S.C. § 1231(a)(1). This "removal period" begins when a removal order "becomes administratively final;" when a court, having stayed removal pending review, issues its final order; or when the noncitizen is released from non-immigration detention. *Id.* The ninety-day period may be "extended . . . if the alien fails

or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.* The Government may also keep noncitizens in prolonged custody if they present certain dangers to the community or are "unlikely to comply with [their] order of removal." 8 U.S.C. § 1231(a)(6).

After six months of post-removal order custody, continued confinement raises constitutional concerns. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Under *Zadvydas v. Davis*, if a noncitizen who has been detained for over six months "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. In the event that it cannot, the individual must be released. *See id.* at 700.

Respondents argue that Petitioner's detention is lawful because (1) he is likely to be removed in the reasonably foreseeable future and (2) Petitioner's most recent period of detention has not exceeded six months. The Court disagrees. Considering the more than four years since Petitioner's final removal order was reinstated in 2022 with no steps taken towards effectuating removal, the Court finds that the presumption of reasonability is either inapplicable or rebuttable. Many district courts in recent months have held similarly. *See, e.g.*, *Nguyen v. Hyde*, No. 25-cv-11470, 2025 WL 1725791 (D. Mass. June 20, 2025); *Tadros v. Noem*, No. 25-cv-4108, 2025 WL 1678501 (D.N.J. June 13, 2025); *Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *6 (D. Md. Sept. 8, 2025).

Here, Petitioner Respondents acknowledge that Petitioner cannot be removed until his claim for withholding of removal is resolved. Although this claim was denied by the immigration judge, Petitioner timely appealed this denial to the BIA and Respondents have provided no reason

to conclude that the BIA's ruling is imminent. The Court therefore concludes that there is good reason to believe that there is no significant likelihood of removal in the foreseeable future.[1] Because no steps toward removal can be taken until the BIA's resolution of this claim, Respondents are unable to show that removal is in fact reasonably foreseeable. *Zadvydas*, 533 U.S. 678 at 701. The Court therefore concludes that Petitioner's continued detention "no longer bears a reasonable relation to the purpose for which [he] was committed." *Id*. at 690 (internal quotation marks omitted).

The Court therefore **ORDERS** as follows.

1. Respondents shall release Petitioner from custody within forty-eight (48) hours of entry of this Order. Petitioner shall be released in a public place, and Respondents must notify Petitioner's counsel of the time and place of his release **at least three hours prior**.
2. Respondents shall provide Petitioner with a copy of this Order upon his release.
3. Petitioner shall comply with the conditions of his previous Order of Supervision while released, including attending any scheduled ICE check-ins and cooperating with removal should the BIA deny his withholding of removal claim.
4. The Government shall update the Court on the status of Petitioner's release by **August 7, 2026**.

---

[1] Respondents also argue that Petitioner's detention is lawful because the Petition fails to put forward specific factual allegations so show that there is no significant likelihood of removal in the reasonably foreseeable future. But while the Court agrees that the Petition's factual allegations are rather sparse, it concludes that Petitioner has made such a showing based on the undisputed fact that Petitioner will not be removed prior to the conclusion of his withholding only removal proceedings. Indeed, it was this fact that led DHS to release him on an OSUP in 2022.

**IT IS SO ORDERED.**

Signed at Houston, Texas on August 4, 2026.

Keith P. Ellison
United States District Judge